IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| DONALD RUSHING, | § | |
|     Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-11-0294 |
| | § | |
| PRIDE INTERNATIONAL, INC. & BP | § | |
| EXPLORATION & PRODUCTION, | § | |
| INC., | § | |
|     Defendants. | § | |

## <u>MEMORANDUM AND ORDER</u>

Pending before the Court is Plaintiff's Motion to Remand [Doc. # 4], to which Defendants have responded [Doc. # 10], and Plaintiff has replied [Doc. # 11], and Defendants filed two Sur-replies [Docs. # 12, # 14].   The Court also heard oral argument on this Motion on May 25, 2011, and ordered supplemental briefing.  *See* Doc. # 18.  Plaintiff has now filed its Supplemental Brief [Doc. # 20] and Defendants have filed a Supplemental Response [Doc. # 21].  Having considered the parties' briefing, the applicable legal authorities, and all matters of record, the Court **denies** Plaintiff's Motion to Remand [Doc. # 4].

## I.    <u>BACKGROUND</u>

This case arises out of injuries Plaintiff received while working aboard the BP

THUNDER HORSE, a floating offshore oil production facility located in the Gulf of Mexico.  The THUNDER HORSE consists of a large production platform that floats atop four large, buoyant columns that are partially submerged beneath the surface.  It is connected to the sea floor 6,000 feet below by a complex mooring system along with various pipelines and other drilling equipment that extend downward from the platform onto the Outer Continental Shelf.

Plaintiff alleges that, on or about February 4, 2010, he was injured while performing his normal duties aboard the THUNDER HORSE.  Specifically, Plaintiff alleges that

> He was working on top of a four foot platform.  He went to remove a protector from the top of the pipe and hundreds of pounds of pressure released and caused him to fall with equipment falling on his leg and other parts of his bodies [sic] injuring him.  Previously, he has been told by Defendants that each cap had a hole drilled in it so there was no pressure.  This proved to be false.[1]

On April 12, 2010, Plaintiff commenced this action by filing his Original Petition in the Galveston County Court at Law No. One.  In his Original Petition, Plaintiff asserted claims against Defendants only under the Jones Act, 46 U.S.C. § 30104 *et seq.*, and the general maritime law, 28 U.S.C. § 1337.  On September 3, 2010, the court entered an agreed order transferring venue to Harris County, Texas.

---

[1]      Plaintiff's First Amended Petition [Doc. # 1-9] ("Amended Petition"), ¶ 10.

The case then proceeded in the 133rd Judicial District Court of Harris County, Texas.

On December 28, 2010, Plaintiff filed his First Amended Petition.  In that new pleading, Plaintiff re-asserted his claims under the Jones Act and general maritime law.  Additionally, for the first time, Plaintiff asserted that "Plaintiff has state law causes of action against BP arising under the Louisiana Civil Code and premises liability . . . ."[2]

On January 1, 2011, Defendant removed the case to federal court on the basis of federal question jurisdiction, contending that Plaintiff's claims as stated in his First Amended Petition arise under federal law, specifically, the Outer Continental Shelf Lands Act ("OCSLA"), 43 U.S.C. § 1301 *et seq.*  On February 9, 2011, Plaintiff filed the instant Motion to Remand the case to state court.  That Motion has been fully briefed and is now ripe for decision.

## II.   <u>LEGAL STANDARD</u>

"'Federal courts are courts of limited jurisdiction.'"  *Rasul v. Bush*, 542 U.S. 466, 489 (2004) (quoting *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994)); *McKee v. Kansas City S. Ry. Co.*, 358 F.3d 329, 337 (5th Cir. 2004); *Howery v. Allstate Ins. Co.*, 243 F.3d 912, 916 (5th Cir. 2001).  "'They possess only that power authorized by Constitution and statute, which is not to be expanded by

---

[2]      *Id.*, ¶ 13.

judicial decree.'"  *Rasul*, 542 U.S. at 489 (quoting *Kokkonen*, 511 U.S. at 377 (citations omitted)).  The court "must presume that a suit lies outside this limited jurisdiction, and the burden of establishing federal jurisdiction rests on the party seeking the federal forum."  *Bourne v. Wal-Mart Stores, Inc.*, 582 F. Supp. 2d 828, 832 (E.D. Tex. 2008) (quoting *Howery*, 243 F.3d at 916 (citing *Kokkonen*, 511 U.S. at 377)); *Guillory v. PPG Indus., Inc.*, 434 F.3d 303, 308 (5th Cir. 2005); *see also Boone v. Citigroup, Inc.*, 416 F.3d 382, 388 (5th Cir. 2005).

"The removing party bears the burden of showing that federal jurisdiction exists and that removal was proper."  *Manguno v. Prudential Prop. and Cas. Ins. Co.*, 276 F.3d 720, 723 (5th Cir. 2002); *accord Gutierrez v. Flores*, 543 F.3d 248, 251 (5th Cir. 2008).  In the absence of diversity jurisdiction, federal question jurisdiction is required for removal.  *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987).  District courts have "original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."  28 U.S.C. § 1331.  Congress allows for removal of a case from state court to federal court when a plaintiff's complaint alleges a claim "arising under" federal law.  28 U.S.C. § 1441; *Beneficial Nat'l Bank v. Anderson*, 539 U.S. 1, 6 (2003).  To determine whether jurisdiction is present in a removed action, the claims set forth in the state court petition are considered as of the date of removal.  *See Campbell v. Stone Ins., Inc.*, 363 F.3d 556, 558 n.1 (5th Cir. 2004).

Generally, "[t]he presence or absence of federal-question jurisdiction is

governed by the 'well-pleaded complaint rule,' which provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint." *Caterpillar*, 482 U.S. at 392. "Federal question jurisdiction under § 1331 extends to cases in which a well-pleaded complaint establishes either that federal law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law." *Frank v. Bear Stearns & Co.*, 128 F.3d 919, 922 (5th Cir. 1997); *accord Singh v. Duane Morris LLP*, 538 F.3d 334, 337-38 (5th Cir. 2008). A plaintiff is the "master of his complaint" and may choose to allege only state law causes of action, even when federal remedies might also exist. *See Elam v. Kansas City Southern Ry. Co.*, 635 F.3d 796, 803 (5th Cir. 2011) (citing *Bernhard v. Whitney Nat'l Bank*, 523 F.3d 546, 551 (5th Cir. 2008)). Thus, under the well-pleaded complaint rule, a plaintiff may avoid federal jurisdiction by exclusively relying on state law, even where a federal claim is also available. *Caterpillar*, 482 U.S. at 392; *Elam*, 635 F.3d at 803; *Gutierrez*, 543 F.3d at 251 ( "Under the well-pleaded complaint rule, 'a federal court has original or removal jurisdiction only if a federal question appears on the face of the plaintiff's well-pleaded complaint; generally, there is no federal jurisdiction if the plaintiff properly pleads only a state law cause of action.'" (citing *Bernhard v.*

*Whitney Nat'l Bank*, 523 F.3d 546, 551 (5th Cir. 2008)).[3]

In the case at bar, Defendants do not dispute that Plaintiff's Original Petition did not on its face assert a question of federal law.  Rather, Defendants assert that Plaintiff has voluntarily added a new claim in his First Amended Petition which renders this case removable.  In his Motion to Remand, Plaintiff argues that this case must be remanded because Defendants did not timely remove the case to this Court and because Plaintiff's Jones Act claim is not removable.  Defendants reply that they timely removed this case pursuant to 28 U.S.C. § 1446(b), and that Plaintiff's Jones Act claim is fraudulently pleaded because the THUNDER HORSE is not a vessel. Defendants further argue that Plaintiff's claims arise from his activities on a work platform attached to the Outer Continental Shelf, and, therefore, OCSLA applies.

---

[3]    An exception to the well-pleaded complaint rule arises when Congress "so completely preempt[s] a particular area that any civil complaint raising this select group of claims is necessarily federal in character." *Elam*, 635 F.3d at 803; *Gutierrez*, 543 F.3d at 252 (quoting *Johnson v. Baylor Univ.*, 214 F.3d 630, 632 (5th Cir. 2000)). The Fifth Circuit recently explained, "[u]nder the "complete preemption" doctrine, "what otherwise appears as merely a state law claim is converted to a claim 'arising under' federal law for jurisdictional purposes because the federal statute so forcibly and completely displaces state law that the plaintiff's cause of action is either wholly federal or nothing at all." *Elam, 635* F.3d at 803 (citing *New Orleans & Gulf Coast Ry. Co. v. Barrois*, 533 F.3d 321, 330 (5th Cir. 2008) (internal quotation marks and brackets omitted), and *Franks Inv. Co. LLC v. Union Pacific R.R. Co.*, 593 F.3d 404, 407 (5th Cir. 2010) (en banc)).  An example of a complete preemption statute is the Employee Retirement Income Security Act ("ERISA").

## III.   ANALYSIS

### A.   Timeliness of Removal

The relevant statute, 28 U.S.C. § 1446(b), sets forth the following guidelines regarding removal of actions from state court:

> The notice of removal of a civil action or proceeding shall be filed within thirty days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based, or within thirty days after the service of summons upon the defendant if such initial pleading has then been filed in court and is not required to be served on the defendant, whichever period is shorter.
>
> If the case stated by the initial pleading is not removable, a notice of removal may be filed within thirty days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable . . . .

28 U.S.C. § 1446(b) (emphasis added).  The first paragraph of section 1446(b) applies to cases that are removable as initially filed; the second paragraph applies to cases that although not initially removable, later become removable. *See Johnson v. Heublein*, 227 F.3d 236, 241 (5th Cir. 2000); *Chapman v. Powermatic, Inc.*, 969 F.2d 160, 161 (5th Cir. 1992).   Under the second paragraph of section 1446(b), the thirty-day removal clock begins to run when a defendant receives a pleading, motion, or other paper that reveals on its face a basis for federal jurisdiction.  *Chapman*, 969 F.2d at 164; *Leffall v. Dallas Indep. Sch. Dist.*, 28 F.3d 521, 525 (5th Cir. 1994).

It is undisputed that Defendants did not file a notice of removal within thirty days of Plaintiff's Original Complaint.  Nevertheless, Defendants argue that they timely and properly removed this case pursuant to the second paragraph of 28 U.S.C. § 1446(b) because the lawsuit was not initially removable when filed.[4]  The Court agrees.  Plaintiff's Original Petition stated claims against Defendants for negligence under the Jones Act and for unseaworthiness and maintenance and cure benefits under general maritime law.  "It is axiomatic that Jones Act suits may not be removed from state court because 46 U.S.C. § 688 (the Jones Act) incorporates the general provisions of the Federal Employers' Liability Act, including 28 U.S.C. § 1445(a), which in turn bars removal."  *Lackey v. Atlantic Richfield Co.*, 990 F.2d 202, 207 (5th Cir. 1993); *accord Holmes v. Atlantic Sounding Co., Inc.*, 437 F.3d 441, 445 (5th Cir. 2006).  Plaintiff's claims under general maritime law also did not provide a basis for removal.  *See Addison v. Gulf Coast Contracting Servs.*, 744 F.2d 494, 498-99 (5th Cir. 1984) ("[A] maintenance and cure claim is not sufficiently distinct from a Jones Act claim arising out of the same set of operative facts to warrant removal." (internal quotation marks omitted)); *see also* 28 U.S.C. § 1441(c).

Plaintiff argues that the Original Petition was initially removable because

---

[4]     Alternatively, Defendants argue that they timely and properly removed this case pursuant to the revival exception to the first paragraph of 28 U.S.C. § 1446(b). Because the Court finds that this case is governed by the second paragraph of 28 U.S.C. § 1446(b), the Court need not address this argument.

Defendants could have sought removal on the basis of fraudulent joinder of a Jones Act claim.  *See, e.g.*, *Holmes*, 437 F.3d at 445 ("A fraudulently pleaded Jones Act claim does not, however, bar removal."); *see generally Moore v. BIS Salamis, Inc.*, 748 F. Supp.2d 598 (E.D. Tex. 2010).  Plaintiffs also point to the fact that Defendants repeatedly argued in the state court that the THUNDER HORSE was not a Jones Act "vessel" because it was permanently moored to the sea floor and located in the Outer Continental Shelf.  Defendants respond that, at the time the Original Petition was filed, they lacked sufficient grounds to assert that Plaintiff had fraudulently pleaded a Jones Act claim.

The Court is not persuaded by Plaintiff's contentions.  Defendants were allowed to make any and all arguments in state court to defend against Plaintiff's Jones Act claims.  Assertions about the invalidity of the Jones Act claim did not render that claim removable on its face.  "The absence of a valid Jones Act claim, of course, does not automatically vest jurisdiction in the district court."  *Hufnagel v. Omega Serv. Indus., Inc.*, 182 F.3d 340, 348 (5th Cir. 1999).  In addition to asserting fraudulent joinder of a Jones Act claim, Defendants would have had to supply an independent basis for federal jurisdiction.  To do so, Defendants would have had to tell Plaintiffs that their claims could be brought under OCSLA.  Plaintiff cites, and the Court has found, no authority that Defendants had any obligation to identify for Plaintiff a new

potentially viable cause of action.

Rather, each plaintiff is the master of his own complaint.  *See Caterpillar*, 482 U.S. at 391; *Elam*, 635 F.3d at 803; *Gutierrez*, 543 F.3d at 251.[5]  Plaintiff's claims under OCSLA are evidenced by his pleading of Louisiana state law causes of action in his First Amended Petition, because the THUNDER HORSE is located off the coast of New Orleans, and OCSLA applies the law of the adjacent state.[6]  *See Grand Isle Shipyard, Inc. v. Seacor Marine, LLC*, 589 F.3d 778, 782-83 (5th Cir. 2009). Plaintiff's First Amended Complaint therefore did plead a claim arising under federal law, specifically OCSLA.  Accordingly, the Court concludes that this action did not become removable until Plaintiff filed his First Amended Petition on December 28,

---

[5]     Plaintiff is correct that defendants in other cases have chosen to remove on the basis of a fraudulent joinder theory when no federal claim was asserted in the state petition. The law does not require this strategy, which in many instances may not be successful.

[6]     OCSLA provides:

> To the extent that they are applicable and not inconsistent with this subchapter or with other Federal laws and regulations of the Secretary now in effect or hereafter adopted, the civil and criminal laws of each adjacent State, now in effect or hereafter adopted, amended, or repealed are declared to be the law of the United States for that portion of the subsoil and seabed of the outer Continental Shelf, and artificial islands and fixed structures erected thereon, which would be within the area of the State if its boundaries were extended seaward to the outer margin of the outer Continental Shelf . . . .

43 U.S.C. § 1333(a)(2)(A) .

2010, which affirmatively asserted claims under state law which by necessity involve OCSLA.  The Court concludes that Defendants timely removed this case on January 21, 2011.

### B.  <u>Is the Jones Act Claim Fraudulently Pleaded?</u>

"Generally, Jones Act cases are not removable from state court."  *See Holmes*, 437 F.3d at 445 (citing *Burchett v . Cargill, Inc.*, 28 F.3d 173, 175 (5th Cir. 1995)).  "A fraudulently pleaded Jones Act claim does not, however, bar removal."  *Id.*  "A defendant may 'pierce the pleadings to show that the Jones Act claim has been fraudulently pleaded to prevent removal.'" *Id.* (quoting *Burchett*, 48 F.3d at 175).  The district court may use a "summary judgment-like procedure" to determine whether a plaintiff has fraudulently pleaded a Jones Act claim.  *Burchett*, 48 F.3d at 176.  "'The court may deny remand where, but only where, resolving all disputed facts and ambiguities in current substantive law in plaintiff's favor, the court determines that the plaintiff has no possibility of establishing a Jones Act claim on the merits.'" *Holmes*, 437 F.3d at 445 (quoting *Hufnagel*, 182 F.2d at 345-46).

"To qualify as a seaman under the Jones Act, an employee must first demonstrate that his duties 'contribute to the function of the vessel or to the accomplishment of its mission.'" *Id.* (quoting *Chandris, Inc. v. Latsis*, 515 U.S. 347, 359 (1995)).  Second, "a seaman must have a connection to a vessel in navigation (or

an identifiable group of vessels) that is substantial in terms of both its duration and its nature." *Id.* Defendants contend only that the THUNDER HORSE is not a vessel under the Jones Act. "The existence of a vessel is a fundamental prerequisite to Jones Act jurisdiction and is at the core of the test for seaman status." *Id.* at 446. "Whether an unconventional craft is a vessel is an issue that is generally resolved as a matter of law . . . ." *Id.* at 445. Accordingly, if Defendants carry their burden and demonstrate that there exists no genuine issue of material fact that the THUNDER HORSE is not a vessel for Jones Act purposes, then the Court must find that Plaintiff's Jones Act claims are fraudulently pleaded.

"What constitutes a vessel under the Jones Act has escaped precise definition." *Moore v. Bis Salamis, Inc.*, 748 F. Supp. 2d 598, 604 (E.D. Tex. 2010) (citing *Holmes*, 437 F.3d at 446). In 2005, the United States Supreme Court reexamined the definition of "vessel" in the context of the Longshore and Harbor Workers' Compensation Act ("LHWCA"). *Stewart v. Dutra Constr. Co.*, 543 U.S. 481, 488–97 (2005). In *Stewart*, the Supreme Court stated that, for the purposes of the LHWCA, the term "vessel" is defined by 1 U.S.C. § 3 as "every description of water-craft or other artificial contrivance used, or capable of being used, as a means of transportation on water." *Id.* at 489. Consistent with this definition, the Supreme Court determined that any watercraft "practically capable of maritime transportation, regardless of its

primary purpose or state of transit at a particular moment" is a vessel under the LHWCA.  *Id.* at 497.  Accordingly, "[t]he question remains in all cases whether the watercraft's use as a means of transportation on water is a practical possibility or merely a theoretical one."  *Id.* at 496.  In *Holmes*, the Fifth Circuit concluded that "Stewart's definition of 'vessel' applies equally to the Jones Act and the LHWCA . . . ."  437 F.3d at 448.  Accordingly, a Jones Act "vessel" encompasses any watercraft that is "practically capable of maritime transportation . . . ."  *Id.*  Although the Fifth Circuit did not expressly overrule its prior jurisprudence regarding vessel status, the *Holmes* court acknowledged that "the class of water-borne structures that are vessels for . . . Jones Act purposes is broader than we have heretofore held."  *Id.* at 449.[7]

---

[7]     The seminal case in the Fifth Circuit before *Stewart* was *Fields v. Pool Offshore, Inc*., 182 F.3d 353, 357 (5th Cir. 1999).  "Courts have long recognized a distinction between 'work platforms' that are designed for primarily stationary residence and true vessels."  *Fields*, 182 F.3d at 357 (citing *Rodrigue v. Aetna Cas. & Sur. Co.*, 395 U.S. 352 (1969) ("[T]he Court has specifically held that drilling platforms are not within admiralty jurisdiction." (citing *Phoenix Const. v. The Steamer Poughkeepsie*, 212 U.S. 558 (1908)))); *accord Mendez v. Anadarko Pet. Corp.*, No. H-10-1755, 2010 WL 4644049 (S.D. Tex. Nov. 5, 2010) (Rosenthal, J.).  Under *Fields*, the Fifth Circuit traditionally used a three-part test to determine whether work platforms were Jones Act vessels.  *Fields*, 182 F.3d at 357-58.  The test considered (1) whether the craft was designed primarily to serve as a work platform, (2) whether the structure was moored or otherwise secured at the time of the accident, and (3) "whether the transportation function of the structure went beyond theoretical mobility and occasional incidental movement."  *Id.*  This Court need not do a detailed analysis under the *Fields* rubric.  Suffice it to say that the facts of record would easily establish
                                                                           (continued...)

The Fifth Circuit has yet to apply the *Stewart* and *Holmes* analysis to floating platforms such as the THUNDER HORSE. However, at least one federal district court and at least one Texas state court have squarely held that the THUNDER HORSE is not a vessel under the Jones Act. *See Moore v. Bis Salamis*, *Inc.*, 748 F. Supp. 2d 598, 603-08 (E.D. Tex. 2010) (Crone, J.); *Scroggs v. Bis Salamis, Inc.*, 2010 WL 3910563, at *4-*8 (E.D. Tex. Oct. 5, 2010) (Crone, J.); *Charles Hernandez v. M-I Swaco, Inc.*, No. 62,268 (Co. Ct. at Law No. 1, Galveston County, Tex. April 1, 2011).[8] The Court adopts the extensive, persuasive findings and reasoning in *Moore* and *Scroggs*.[9] *Moore*, 748 F. Supp. 2d at 606, 608 ("[B]ecause of its extensive

---

[7](...continued)
         under the *Fields* test that the THUNDER HORSE is not a vessel for Jones Act purposes. *See* text *infra* at 14-18.

[8]         Judge Lee Rosenthal also has found two floating platforms similar to the THUNDER HORSE not to be vessels under the Jones Act. *See Case v. Omega Natchiq, Inc.*, No. H-08-0835, 2008 WL 2714124, at *7 (S.D. Tex. July 10, 2008) (Rosenthal, J.) (discussing the "Rowan Midland," an offshore structure moored in the Gulf of Mexico), and *Mendez v. Anadarko Pet. Corp.*, No. H-10-1755, 2010 WL 4644049 (S.D. Tex. Nov. 5, 2010) (holding that the RED HAWK Spar, a floating oil and gas cell spar (platform), was not a "vessel" for Jones Act purposes). Judge Rosenthal's analysis in *Mendez* is particularly apt. She based her conclusion on the fact that the RED HAWK Spar was tightly anchored to the ocean floor, had extensive underwater infrastructure of flow lines, export pipeline systems, and was intended to remain in place for the productive life of the field. *See Mendez*, 2010 WL 4644049, at *6–*8. *See also Jordan v. Shell Oil Co.*, No. G–06–265, 2007 WL 2220986, at *1–*2 (S.D.Tex. Aug. 2, 2007) (holding the URSA floating oil production facility was not a vessel under the Jones Act).

[9]         As explained by Judge Crone, the main portion of the THUNDER HORSE was towed to its offshore location. *Moore*, 748 F. Supp. 2d at 606. The owner "extensively
                                                                (continued...)

attachment to the ocean floor and long-term commitment to a single location, . . . the

THUNDER HORSE is a work platform that is permanently attached to the seabed and

not a Jones Act vessel."); *Scroggs*, 2010 WL 3910563, at *6-*8.

Plaintiff argues that this Court should not rely on *Moore* and *Scroggs* because

Plaintiff has now been able to garner more evidence indicating that the THUNDER

HORSE is a "vessel." Plaintiff presents several documents that label it as such at least

once: a BP press release, an American Bureau of Shipping certification, a Coast

Guard inspection, BP's tow configuration, the operating manual for the THUNDER

HORSE, and documents from GVA consultants, the company that designed and built

the THUNDER HORSE.[10] The Court is not persuaded. The nominal designation of

the THUNDER HORSE as a "vessel" in various documents does not determine the

---

[9](...continued)

modified" the platform to attach it to the ocean floor. *Id.* Sixteen chain-mooring lines connected to 16 suction piles, which extend 90 feet into the ocean floor, fasten the THUNDER HORSE to the ocean floor. *Id.* Two production pipelines, risers, water-injection lines, and umbilical control lines also spread out across the ocean floor. *Id.* Judge Crone concluded that although the THUNDER HORSE was capable of lateral movement within a 350 feet radius for the purpose of servicing a group of closely-packed wellheads around the drill center, *id.* at 608, the limited range of motion was merely incidental to its function as a work platform and did "not render it practically capable of maritime transportation." *Id.* Judge Crone found that the platform was to "remain at its current location for the duration of its service life—approximately 25 years—after which it will most likely be disassembled and scrapped." *Id.* at 606. She concluded that the THUNDER HORSE was "a permanent structure attached to the seabed and, thus, not practically capable of maritime transportation" and not a Jones Act vessel. *Id.*

[10]     *See* Plaintiff's Supplemental Brief [Doc. # 20], at 2-5, at Exhs. C, D, E G, H, and I attached thereto.

legal question of the THUNDER HORSE's vessel status under the Jones Act.  Rather the controlling factor is whether the THUNDER HORSE is practically capable of maritime transportation.  *See Stewart*, 543 U.S. at 496; *Holmes*, 437 F.3d at 448.

Plaintiff also presents evidence that he argues demonstrates that the THUNDER HORSE is "capable of movement."[11]  Plaintiff selectively quotes a BP interrogatory response, stating that "[a]ssuming each of these steps are completed in the proper order over the many months and perhaps years of work such a task would require, it would be technically feasible to move the THUNDER HORSE PDQ to a different location."[12]  Plaintiff improperly ignores the remainder of the interrogatory response, which details six complicated steps that would need to be taken before the THUNDER HORSE could be moved to a different location.[13]  BP further explains that each of these hyper-technical steps would require specialty equipment and the completion of all of them would likely take years.[14]  Plaintiff further relies on the deposition of Charles Hernandez, Plaintiff's counsel's former client and the plaintiff in *Charles Hernandez v. M-I Swaco, Inc.*, No. 62,268, a Galveston County state court case, which also rejected the argument that the THUNDER HORSE was a vessel under the Jones

---

[11]     *See id.*, at 5-10.

[12]     *See* Exh. J to Plaintiff's Supplemental Brief [Doc. # 20-10], at 7.

[13]     *See id.* at 5-7.

[14]     *See id.*

Act.[15]  Hernandez testified that he had seen the THUNDER HORSE move "100 to 200

feet."[16]  Plaintiff also relies on the deposition of Edward Ziegler, a retained expert in

the *Hernandez* case, who testified that the THUNDER HORSE is a vessel because

"anything that floats and transports people [and/or] materials is a vessel."[17]

The Court is entirely unpersuaded.  Plaintiff apparently misapprehends the

proper test.  The Court must evaluate whether the watercraft in issue is "practically

capable of maritime transportation," not whether it is practically capable of

---

[15]  *See Charles Hernandez v. M-I Swaco, Inc.*, No. 62,268 (Co. Ct. at Law No. 1, Galveston County, Tex. April 1, 2011); *see also* BP Exploration & Production Inc.'s Motion for Partial Summary Judgment in Cause No. 62,268; *Charles Hernandez v. M-I Swaco, Inc., et al.;* In County Court at Law No. One (1) for Galveston County, Texas (originally filed as Dkt. #14-1), attached as Exh. E to Defendants' Supplemental Response [Doc. # 21].

[16]  *See* Deposition of Charles Hernandez [Doc. # 20-6], at 167.

[17]  *See* Deposition of Edward Ziegler [Doc. # 20-1], at 83 (summarizing his understanding of the Supreme Court's opinion in *Stewart*).  The Court is not persuaded by Ziegler's understanding of the *Stewart* case.  Moreover, his legal conclusions about the THUNDER HORSE's vessel status are in admissible.  "[A]n expert may never render conclusions of law."  *Goodman v. Harris Cnty.*, 571 F.3d 388, 399 (5th Cir. 2009) (citing *Snap-Drape, Inc. v. Comm'r of Internal Rev.*, 98 F.3d 194, 198 (5th Cir. 1996) (holding that expert opinions of "legal conclusions" were properly excluded).  Expert testimony about what the law is or that presents legal conclusions is inadmissible.  *See Estate of Willie Mae Sowell v. United States*, 198 F.3d 169, 171 (5th Cir. 1999); *Askanase v. Fatjo*, 130 F.3d 657, 673 (5th Cir. 1997); *Vanderbilt Mtg. and Fin., Inc. v. Flores*, No. C-09-312, 2010 WL 4595592, at *4 (S.D. Tex. Nov. 1, 2010) ("'Allowing an expert to give his opinion on the legal conclusions to be drawn from the evidence both invades the court's province and is irrelevant.'" (quoting *Owen v. Kerr-McGee Corp.*, 698 F.2d 236, 240 (5th Cir. 1983)); *see also Fisher v. Halliburton*, No. H-05-1731, 2009 WL 5216949, at *3 (S.D. Tex. Dec. 21, 2009) (holding that expert testimony that renders conclusions of law usurps the role of the judge and is not helpful to the trier of fact).

movement.  Moreover, "[t]he question remains in all cases whether the watercraft's use 'as a means of transportation on water' is a practical possibility or merely a theoretical one."  *Stewart*, 543 U.S. at 496.  Defendants do not dispute that the THUNDER HORSE is capable of laterally moving from wellhead to wellhead, up to a 350 foot radius, by tightening and loosening its sixteen permanent mooring chains.  As Judge Crone  persuasively stated in *Moore*, this movement is purely incidental and is insufficient to confer vessel status.  *See Moore*, 748 F. Supp. 2d at 608.  Having reviewed the record as a whole, the Court concludes that Plaintiff has not raised a fact question that the THUNDER HORSE is a vessel for purposes of the Jones Act.[18]

In light of the Court's conclusion that the evidence of record and pertinent law establish as a matter of law that the THUNDER HORSE is a not a "vessel," Plaintiff cannot be a Jones Act seaman and thus has no possibility of prevailing on his Jones Act claim.  Accordingly, Plaintiff's Jones Act claim is fraudulently pleaded for removal purposes.

---

[18]    Plaintiff requests additional discovery on vessel status.  This request is rejected.  The Court already granted Plaintiff limited additional discovery on his motion to remand. Moreover, the Court concludes that the additional discovery Plaintiff requests would not raise a material fact question as to the THUNDER HORSE's vessel status.

### C.      Does OCSLA Claim Provide Federal Question Jurisdiction?

As indicated above, the absence of a valid Jones Act claim does not automatically make removal proper.  Defendants must affirmatively demonstrate that this suit was removable under 28 U.S.C. § 1441.  *See Hufnagel*, 182 F.3d at 348.  In their Notice of Removal [Doc. # 1], Defendants rely on federal question jurisdiction under OCSLA as the basis for subject matter jurisdiction.  For OCSLA to apply to an action, a plaintiff need not specifically assert any claims under that statute in the complaint; rather, OCSLA governs if the facts alleged within the complaint fall within the statutory grant of jurisdiction.  *Nase v. Teco Energy Inc.*, 347 F. Supp. 2d 313, 317 (E.D. La. 2004) (citing *Tenn. Gas Pipeline v. Houston Cas. Ins. Co.*, 87 F.3d 150, 154–55 (5th Cir. 1996)).  OCSLA provides:

> The Constitution and laws and civil and political jurisdiction of the United States are extended to the subsoil and seabed of the [O]uter Continental Shelf and to all artificial islands, and all installations and other devices permanently or temporarily attached to the seabed, which may be erected thereon for the purpose of exploring for, developing, or producing resources therefrom, or any such installation or other device (other than a ship or vessel) for the purpose of transporting such resources, to the same extent as if the [O]uter Continental Shelf were an area of exclusive Federal jurisdiction located within a State . . . .

43 U.S.C. § 1333(a)(1).  "The purpose of the [OCSLA] [is] to define a body of law applicable to the seabed, the subsoil, and the fixed structures . . . on the [O]uter Continental Shelf."  *Rodrigue v. Aetna Cas. & Sur. Co.*, 395 U.S. 352, 355 (1969);

accord *Grand Isle Shipyard, Inc. v. Seacor Marine, LLC*, 589 F.3d 778, 784 (5th Cir.2009), *cert. denied*, ––– U.S. –––, 130 S.Ct. 3386 (2010).  OCSLA expressly grants subject matter jurisdiction to the federal courts over cases and controversies "arising out of or in connection with . . . any operation conducted on the [O]uter Continental Shelf which involves exploration, development, or production of the minerals" from the Outer Continental Shelf.  43 U.S.C. § 1349(b)(1); *accord Texaco Exploration & Prod. v. AmClyde Engineered Prods. Co., Inc.*, 448 F.3d 760, 768 (5th Cir. 2006).[19]

In his Motion to Remand [Doc. # 4], Plaintiff does not specifically argue why OCSLA does not apply to his claims.  Rather, Plaintiff's Motion focuses on arguing that the THUNDER HORSE is a vessel under the Jones Act and that Defendants' removal was untimely.  Vessels are specifically excluded from 43 U.S.C. § 1333(a)(1)'s grant of jurisdiction.  As discussed above, however, the THUNDER HORSE is not a vessel, but is a work platform attached to the seabed.  Because "the THUNDER HORSE is attached to the Outer Continental Shelf and is engaged in the exploration, development, or production of mineral resources therefrom," *see Moore*,

---

[19]     "[R]ecognizing that the statutory federal law may in some areas be inadequate, OCSLA incorporates aspects of the laws of adjacent states, where those laws are not inconsistent with OCSLA. These incorporated state laws become "surrogate federal law,' and are considered exclusively federal law when applicable under OCSLA. 43 U.S.C. § 1333(a)(2)(A)." *Hufnagel*, 182 F.3d at 349 (footnote omit

748 F. Supp. 2d at 609, the THUNDER HORSE falls within OCSLA's jurisdictional grant.  *See* 43 U.S.C. § 1333(a)(1), 1349(b)(1); *Dahlen v. Gulf Crews, Inc.*, 281 F.3d 487, 492 (5th Cir. 2002).  Therefore, the district court would have had jurisdiction over Plaintiff's claims had he chosen to file them in federal court.  *See Hufnagel*, 182 F.3d at 350.

The Fifth Circuit has recognized, however, that "OCSLA does not necessarily transform maritime claims falling within its jurisdictional grant into claims arising under federal law."  *See Hufnagel*, 182 F.3d at 350.  As the Fifth Circuit has explained, "OCSLA does not displace general maritime law," and "maritime cases do not 'arise under' federal law for purposes of removal jurisdiction."  *Id.* (citing *Tennessee Gas Pipeline v. Houston Cas. Ins. Co.*, 87 F.3d 150, 153 (5th Cir. 1996)).  "Any civil action of which the district courts have original jurisdiction," but which does not "arise under" federal law, "shall be removable only if none of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought."  28 U.S.C. § 1441(b); *see Hufnagel*, 182 F.3d at 348.  "Therefore where a claim within OCSLA's grant of original federal court jurisdiction is nevertheless governed by maritime law, it arguably does not provide removal jurisdiction unless no defendant is a citizen of the state of suit . . ."  *Hufnagel*, 182 F.3d at 350.  Although the Fifth Circuit has not yet directly resolved this question,

some courts have held that "where plaintiffs have alleged maritime claims which fall within OCSLA's jurisdictional grant . . . those cases may be removed only subject to subsection 1441(b)'s restriction that no defendant may reside in the state in which the case is filed." *See id.* at 350-51 (citing cases).

This issue need not be resolved in this case because the Court concludes as a matter of law that Plaintiff has asserted a non-maritime claim against Defendants. Plaintiff in his First Amended Petition asserts non-maritime claims, specifically, claims under Louisiana state law.   Because Plaintiff's injury occurred entirely on and was caused entirely by his work on the THUNDER HORSE, a fixed platform and not a vessel, Plaintiff does not present any claim within the admiralty or maritime jurisdiction of the federal courts.  *See Hufnagel*, 182 F.3d at 349, 351-53.  Plaintiff's state law claims thus "arise under" OCSLA, 43 U.S.C. § 1333(a)(2)(A); *see Hufnagel*, 182 F.3d at 351.  They fall within Sections 1441(b) and 1331, and are not subject to Section 1441(b)'s restriction to cases in which no defendant is a citizen of the state of suit.  The Court accordingly has subject matter jurisdiction over this dispute and removal was proper under Section 1441.

## IV.   <u>CONCLUSION AND ORDER</u>

Based on the foregoing analysis, the Court concludes that Defendants timely removed this case pursuant to 28 U.S.C. § 1446(b).  The Court further concludes that

Plaintiff is not a Jones Act seaman because the THUNDER HORSE is not a vessel under the Jones Act.  Since Plaintiff has no possibility of prevailing on his Jones Act claim, this claim does not prevent removal of the instant case.  Finally, the Court concludes that because Plaintiff has asserted a non-maritime claim arising under OCSLA , this Court has subject matter jurisdiction over this dispute and removal was proper.  Accordingly, it is hereby

**ORDERED** that Plaintiff's Motion to Remand [Doc. # 4] is **DENIED.**

SIGNED at Houston, Texas, this 22nd day of **July, 2011.**

Nancy F. Atlas
United States District Judge